UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:19-cr- 207-01/05-LM |
| | ) | |
| MUHAMMAD KAMRAN WALI | ) | IEEPA & ECRA Conspiracy |
| (Counts 1,2), | ) | (50 U.S.C. §§ 1705, 4819) |
| | ) | (Count 1) |
| MUHAMMAD AHSAN WALI | ) | |
| (Counts 1,2), | ) | Conspiracy to Smuggle Goods |
| | ) | (18 U.S.C. § 371) |
| HAJI WALI MUHAMMAD SHEIKH | ) | (Count 2) |
| (Counts 1,2), | ) | |
| | ) | |
| ASHRAF KHAN MUHAMMAD | ) | |
| (Counts 1,2), | ) | |
| | ) | |
| and | ) | |
| | ) | |
| AHMED WAHEED | ) | |
| (Counts 1,2), | ) | |
| | ) | |
| Defendants. | ) | |

INDICTMENT

THE GRAND JURY CHARGES THAT:

COUNT 1

[50 U.S.C. § 1705 – Conspiracy to Violate International Emergency Economic Powers Act;
50 U.S.C. § 4819 – Conspiracy to Violate the Export Control Reform Act of 2018 ]

Introduction

At all times relevant to this Indictment:

1.     The President of the United States is empowered to issue executive orders that

have the full force and effect of law.

2.      The International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701-1708, grants the President the authority to declare a national emergency to address unusual and extraordinary threats to the national security, foreign policy, and economy of the United States.   Among other things, IEEPA empowers the President to issue regulations governing exports from the United States.

3.      Pursuant to IEEPA, on August 17, 2001, the President issued Executive Order 13,222, which declared a national emergency with respect to the unusual and extraordinary threat to the national security, foreign policy, and economy of the United States in light of the expiration of the Export Administration Act ("EAA"), 50 App. U.S.C. §§ 2401-2420, which lapsed on August 17, 2001.  While in effect, the EAA regulated the export of goods, technology, and software from the United States.  Pursuant to the EAA, the Department of Commerce ("DOC")'s Bureau of Industry and Security ("BIS") promulgated the Export Administration Regulations ("EAR"), 15 C.F.R. §§ 730-774, which contained restrictions on the export of goods outside of the United States, consistent with the EAA.  In Executive Order 13,222, pursuant to IEEPA, the President ordered that the EAR's provisions remained in full force and effect despite the expiration of the EAA.  Presidents have issued annual Executive Notices extending the national emergency declared in Executive Order 13,222 from the time period covered by that Executive Order through the present.

4.      On August 13, 2018, the President signed into law the National Defense Authorization Act of 2019, which includes provisions on export controls, entitled the Export Control Reform Act of 2018 ("ECRA"), 50 U.S.C. §§ 4801 et seq.  In part, ECRA provides permanent statutory authority for the EAR.  For conduct that predates August 13, 2018, IEEPA is

the controlling statute.  For conduct occurring after August 13, 2018, ECRA is the controlling

statute.

5.     Pursuant to IEEPA and ECRA, the DOC reviewed and controlled the export of

certain goods and technologies from the United States to foreign countries.  In particular, the

DOC placed restrictions on the export of goods and technologies that it has determined could

make a significant contribution to military potential or nuclear proliferation of other nations or

that could be detrimental to the foreign policy or national security of the United States.

6.     Through the EAR, DOC imposed license or other requirements before an item

(i.e., commodities, software, or technology) subject to the EAR could be lawfully exported from

the United States or lawfully re-exported from another country.  Items "subject to the EAR"

included all items in the United States and all U.S.-origin items wherever located, irrespective of

whether a license was required for the export of that item (with certain exceptions described

below).  Activities of U.S. or foreign persons prohibited by any order issued under the EAR were

also "subject to the EAR."  "EAR99" is a classification for items subject to the EAR, but not

subject to certain expanded export controls by the U.S. Government.  Items not subject to the

EAR were items exclusively controlled for export by other federal agencies and other specified

items not relevant here.

7.     In addition, the EAR contained a list of names of certain foreign persons –

including businesses, research institutions, government and private organizations, individuals,

and other types of legal persons – that were subject to specific license requirements for the

export, re-export, and/or in-country transfer of specified items.  The persons comprised the

DOC's "Entity List," at Title 15, Code of Federal Regulations, Part 744, Supplement No. 4.

Grounds for inclusion on the Entity List included activities sanctioned by the U.S. State

Department and activities contrary to U.S. national security or foreign policy interests.  The persons on the Entity List were subject to export licensing requirements and policies supplemental to those found elsewhere in the EAR.

8.      Since November 19, 1998, the Pakistan Atomic Energy Commission ("PAEC") of Islamabad, Pakistan, has been on the BIS Entity List.   Included among the entities and aliases in the PAEC entry on the Entity List are "[n]uclear reactors (including power plants), fuel reprocessing and enrichment facilities, all uranium processing, conversion and enrichment facilities, heavy water production facilities and any collocated ammonia plants."  DOC's License Review Policy associated with PAEC is a presumption of approval for EAR99 items.  Such a presumption does not, however, eliminate the requirement to obtain a license before exporting the item.

9.      On September 18, 2014, the End User Review Committee ("ERC") added Pakistan's Advanced Engineering Research Organization ("AERO") and entities working with AERO to the Entity List for their involvement in activities contrary to the national security and foreign policy interests of the United States related to the illicit export, reexport and transfer (in-country) of items subject to the EAR to unauthorized end users in Pakistan.  The ERC found that these entities' involvement in the procurement of sensitive U.S. technology in support of Pakistan's development of its missile and strategic unmanned aerial vehicle (UAV) programs was in violation of the EAR, which required a license to export, reexport or transfer (in-country) any item subject to the EAR that the exporter, reexporter, or in-country transferor knows will be used in the design, development, production or use of rocket systems by Pakistan.  The ERC further stated that AERO had "used intermediaries and front companies to procure U.S.-origin items by disguising the end-uses and end-users of the items from U.S. exporters thereby

circumventing BIS licensing requirements," and that AERO had "procured items on behalf of Pakistan's Air Weapons Complex (AWC), a Pakistani government entity responsible for Pakistan's cruise missile and strategic UAV programs."

10.     Effective December 15, 2016, the ERC added the Pakistan Air Weapons Complex ("AWC") (and six other entities) to the BIS Entity List, and found that those entities had been involved in actions contrary to the national security or foreign policy interests of the United States.

11.     Also in December 2016, the ERC added the National Engineering and Scientific Commission ("NESCOM") of Pakistan to the BIS Entity List.

12.     The U.S. Government required the filing of electronic export information ("EEI") through the Automated Export System ("AES") pursuant to Title 13, United States Code, Section 305; the EAR; and the Foreign Trade Regulations, 15 C.F.R. pt. 30.  The purpose of these requirements was, in part, to strengthen the United States government's ability to prevent the export of certain items to unauthorized destinations and end-users because the AES aids in targeting, identifying, and when necessary confiscating suspicious or illegal shipments prior to exportation.  With exceptions not relevant to the exports at issue in this Indictment, EEI was required to be filed for, among other things, the export of commodities valued at over $2500 classified under any particular Harmonized Tariff Schedule commodity classification code.  An EEI is also required for an export of any value that would require an export license.  Since September 18, 2014, a license would have been required to export any items to AERO, and since November 19, 1998, a license would have been required to export any items to PAEC. The EEI was required to contain, among other things:  detailed information about the seller, manufacturer, or exporter; the date of export; the ultimate end-user; the country of ultimate destination; the

value of the goods being exported; the Export Control Classification Number ("ECCN"), when required; and if applicable, the export license number.  By filing this information with the United States Government, the filer certifies that the EEI information is true, accurate, and complete. Providing false or misleading information, or causing such information to be provided, in connection with the preparation and submission of "export control documents," including EEI filings, is a violation of the EAR.  Similarly, concealing information from the DOC or U.S. Customs Service by failing to file EEI in connection with an export also violates the EAR.

13.     Pursuant to Section 1705(a) of IEEPA, "[i]t shall be unlawful for a person to violate, attempt to violate, conspire to violate, or cause a violation of any license, order, regulation, or prohibition issued under this chapter," and pursuant to Section 1705(c), "[a] person who willfully commits, willfully attempts to commit, or willfully conspires to commit, or aids or abets in the commission of, an unlawful act described in subsection (a) of this section" shall be guilty of a crime.  ECRA contains similar provisions.  Willful violations of the EAR constitute criminal offenses under IEEPA and ECRA.  Accordingly, an unlicensed export that was made or attempted with the intent that it would ultimately be received by AERO, the Pakistan AWC, NESCOM, or PAEC would be in violation of IEEPA or ECRA.  Likewise, an export to Pakistan accompanied by EEI that falsely identified the end user or ultimate consignee of the goods would be in violation of IEEPA or ECRA.

14.     Defendant MUHAMMAD KAMRAN WALI ("KAMRAN") is a citizen and resident of Pakistan.   KAMRAN controlled the email accounts businessworld.proc1@gmail.com ("EMAIL1"), buzinessworld@gmail.com ("EMAIL2"), and kamran@buzinessworld.com ("EMAIL13").

15.     Defendant MUHAMMAD AHSAN WALI ("AHSAN") is a citizen and resident

of Mississauga, Ontario, Canada.  AHSAN, also known as "Shawn," is a real estate agent in

Ontario.  His last known address is 4453 Weeping Willow Drive, Mississauga, Ontario, Canada.

16.     Defendant HAJI WALI MUHAMMAD SHEIKH ("HAJI") is a resident of

Canada, also living at 4453 Weeping Willow Drive, Mississauga, Ontario, Canada.  HAJI is the

father of KAMRAN and AHSAN.  HAJI and AHSAN used the email accounts

bzworld@hotmail.com ("EMAIL8") and annservices@hotmail.com ("EMAIL9").

17.     Defendant ASHRAF KHAN MUHAMMAD ("KHAN") is a resident of Hong

Kong.  He is also known as "Shakeel." His residential address is M/F 20 Pei Ho Street, Sham

Shui Po, Kowloon Hong Kong.  He used the email accounts shakeelraza77@gmail.com

("EMAIL10") and businessworldhk@hotmail.com ("EMAIL11").

18.     Defendant AHMED WAHEED ("WAHEED") is a resident of Ilford, in Essex, in

the United Kingdom.  He is the uncle of Unindicted Co-conspirator 1 and used the email account

buzinessintl@gmail.com ("EMAIL5").

19.     Unindicted Co-Conspirator 1 ("UC-1") is a citizen of Pakistan, a lawful

Permanent Resident of the United States, and at the times relevant to this Indictment, was a

resident of Beckley, West Virginia.  He used the email accounts zeetanveer@gmail.com

("EMAIL6") and industriaincus@gmail.com ("EMAIL7").

20.     Unindicted Co-Conspirator 2 ("UC-2") resides in Pakistan.  He controls the email

account proc.businessworld@gmail.com ("EMAIL3").

21.     Unindicted Co-Conspirator 3 ("UC-3") resides in Pakistan and is employed by

Business World in Pakistan.  He controls the email account buznsworld@gmail.com

("EMAIL4").

22.     Business World (Pakistan) is located at 1st Floor, Jahanzeb Center, Bank Road,

Saddar, Rawalpindi, Punjab, Pakistan.  KAMRAN is its CEO.

23.     Product Engineering is located at Unit 10, Chowk Gowalmandi, Daryabad, Gowalmandi, Rawalpindi, Punjab, Pakistan.

24.     Business World (Hong Kong) is owned by KHAN and located at 2d Floor, Kau On Building, 251-53 Cheung Sha Wan Road, Kowloon, Hong Kong.  This address is a high rise industrial building.

25.     Industria HK Ltd. is located at 2d Floor, Kau On Building, 251-253 Cheung Sha Wan Road, Kowloon, Hong Kong.  Its Secretary is KHAN and its Director is WAHEED.

26.     Transcool Auto Air Conditioning is owned by KHAN and located at 2d Floor, Kau On Building, 251-253 Cheung Sha Wan Road, Kowloon, Hong Kong.  It is identified as a branch of Business World in Hong Kong.

27.     Buziness World (Canada) is a company founded in 2012, owned by HAJI, and located at 4453 Weeping Willow Drive, Mississauga, Ontario, Canada.  This address is a single family residence and is the home address of HAJI and AHSAN.

28.     Business International GB was founded in 2002, is owned by WAHEED, and is located at Oak Field House, 3 Oak Field Road, Ilford, Essex, United Kingdom.  3 Oak Field Road is an office above a storefront.

29.     Industria GB was incorporated in 2012, is owned by WAHEED's spouse, and is located at 109 Rose Lane in Romford, United Kingdom.  109 Rose Lane is an office in a storefront.

30.     Industria, Inc. was begun in 2013, is owned by UC-1, and is located at 205 Prince Street, Beckley, West Virginia.  Until on or about March 2017, 205 Prince Street was a pizza shop.  The pizza business subsequently moved to another address associated with UC-1 and

8

Industria, Inc.

Object of the Conspiracy

31.     The object of the conspiracy was to operate an international procurement network of front companies that existed to acquire U.S.-origin goods for the Advanced Engineering Research Organization (AERO) and the Pakistan Atomic Energy Commission (PAEC), which at all times material to this Indictment were on the Entity List, and to cause those goods to be exported from the United States to those entities without export licenses, in violation of U.S. laws.

32.     A further object of the conspiracy was to conceal the true destinations in Pakistan of the U.S.-origin goods by using the conspirators' network of front companies (1) as the supposed purchasers and end users of the goods; and (2) as the apparent source of payments for the goods, when, in truth and in fact, the goods were ultimately received in Pakistan and paid for by AERO or PAEC.

Manner and Means of the Conspiracy

33.     It was a part of the manner and means of the conspiracy that KAMRAN, using the front company Business World (located in Rawalpindi, Pakistan), would initially receive orders for needed U.S.-origin goods from AERO and PAEC.

34.     KAMRAN and other co-conspirators would either contact U.S. companies directly, or pass the orders to U.S. vendors through the network's front companies controlled by WAHEED, KHAN, HAJI, AHSAN, or UC-1, in the UK, Canada, Hong Kong or the U.S.

35.     The defendants and other co-conspirators would, via correspondence and communications with U.S. companies, cause the needed goods to be either exported directly to Pakistan, or transshipped to Pakistan through a third country, without export licenses and in

9

violation of U.S. law.

36.     In their correspondence and communications with U.S. companies, the defendants and their co-conspirators would sometimes use assumed names, would pretend that the buyer and end user of the goods was one of the network's front companies or another shell entity, and would conceal that the true end user of the goods was AERO or PAEC, which were listed on the BIS Entity List.

37.     KAMRAN and other conspirators would obtain funding to purchase the needed goods from AERO and related entities, using accounts in the name of Business World in Rawalpindi.  Funds from those accounts would be periodically wired to accounts in the name of the Buziness World in Canada, and other accounts, to be used, among other things, to purchase the needed goods.

38.     HAJI and AHSAN would send payment for the goods to U.S. companies from accounts controlled by the Buziness World in Canada, or from another entity, so as to conceal that the true source of payment was AERO or PAEC.

39.     At no time would the defendants or their co-conspirators, or their network of front companies, be the true end users or ultimate consignees of the goods exported from the U.S. Instead, the defendants and their co-conspirators would act as procurement agents and serve as fronts for AERO and PAEC.

40.     At no time would the defendants or their co-conspirators apply for or obtain an export license from the United States Department of Commerce authorizing the export of goods to AERO or PAEC in Pakistan.  Specifically, in the course of the conspiracy the defendants and their co-conspirators caused at least the following unlicensed exports to be made from the United States:

| Recipient | Payee | US Company | Product | Value | Date |
|---|---|---|---|---|---|
| Industria HK | Business Intl GB | USCO1, Orlando, FL | Helium Leak Detector | $33593 | September 12, 2014 |
| Business World Hong Kong | BW Canada | USCO2, Woburn, MA | Coaxial connectors | $3935 | September 14, 2014 |
| Business World Pakistan | Unknown | USCO3, El Segundo, CA | Aircraft Parts | $20700 | November 19, 2014 |
| Industria HK | Industria UK | USCO4, South Bend, IN | Electronic connectors | $7080 | December 03, 2014 |
| Business World Hong Kong | Unknown | USCO5, Thief River Falls, MN | Nanoboard | 3060 | December 30, 2014 |
| Business World Hong Kong | Memphis Middle East General Trading | USCO6, Evansville, IN | Industrial equipment brake parts | $6665 | January 5, 2015 |
| Business World Hong Kong | Unknown | USCO7, Concord, CA | Pulser/receiver | $10827 | September 9, 2015 |
| Business World Hong Kong | Unknown | USCO8, Lodi, NJ | Engine parts | $5077 | December 5, 2015 |
| Business World Hong Kong | Muhammad Ahsan Wali | USCO9, Las Vegas, NV | Electronic connectors | $9846 | January 8, 2016 |
| Business World Hong Kong | Unknown | USCO10, Casselberry, FL | Capacitors | $4157 | March 5, 2016 |
| Business World Pakistan | Unknown | USCO11, Wilmington, NC | Electronic connectors | $8130 | April 21, 2016 |
| Business World Pakistan | Unknown | USCO12, Solon, OH | Power Sensor | $3713 | July 14, 2016 |
| Transcool Auto | Business World HK | USCO13, Mansfield, TX | Development Boards | $3196 | September 22, 2016 |
| Transcool Auto | Unknown | USCO14, Fairview, NY | Klockner Moeller Power Supply | $4320 | October 22, 2016 |
| Business World Pakistan | Industria GB LTD | USCO15 | Force sensor | $9211 | October 25, 2016 |
| Industria HK | BW Canada | USCO16, LaFox, IL | Ignitron and Firing module | $6402 | November 09, 2016 |

| Industria HK | BW Canada | USCO17, Brentwood, NH | Cartridge Heaters | $1367 | November 10, 2016 |
|---|---|---|---|---|---|
| Business World Pakistan | Unknown | USCO18, Peachtree City, GA | Civilian Aircraft Parts | $2573 | November 10, 2016 |
| Industria HK | Unknown | USCO11, Wilmington, NC | Electronic Connectors | $7557 | November 15, 2016 |
| Business World Pakistan | Unknown | USCO11, Wilmington, NC | Electronic Connectors | $4817 | November 16, 2016 |
| Industria HK | Unknown | USCO11, Wilmington, NC | Electronic Connectors | $27002 | December 07, 2016 |
| Product Engineering | BW Canada | USCO19, Fremont, CA | Rack mount monitors | $3580 | December 18, 2016 |
| Product Engineering | BW Canada | USCO20, Contoocook, NH | Digital/Analog converters | $6516 | December 20, 2016 |
| Business World Hong Kong | Haji Sheikh (by Credit Card) | USCO21, Chatsworth, CA | Aircraft hour meter | $10000 | January 25, 2017 |
| Business World Hong Kong | Unknown | USCO6, Evansville, IN | Industrial equipment brake parts | $3511 | March 29, 2017 |
| Product Engineering | BW Canada | USCO11, Wilmington, NC | Connectors and Thermostats | $9110 | April 20, 2017 |
| Business World Pakistan | Unknown | USCO11, Wilmington, NC | Electronic Connectors | $2475 | April 20, 2017 |
| Buziness World Pakistan | BW Canada | USCO10, Casselberry, FL | Electronic Components | $7880 | April 21, 2017 |
| Transcool Auto | Unknown | USCO22 | Coaxial connectors | $3784 | April 24, 2017 |
| Transcool Auto | BW Hong Kong | USCO23, Reno, NV | Phase shifter | $9573 | May 29, 2017 |
| Buziness World Pakistan | BW Canada | USCO10, Casselberry, FL | Electronic Components | $7290 | July 14, 2017 |
| Product Engineering | BW Canada | USCO10, Casselberry, FL | Semiconductors | $7290 | July 20, 2017 |
| Business World Hong Kong | BI UK | USCO24, Temecula, CA | Encoders | $4515 | August 17, 2017 |
| Business World Pakistan | Industria HK | USCO25, Manchester, NH | Industrial Safety Equipment | $13549 | July 7, 2018 |

| Transcool Auto | Unknown | USCO26, Palm Bay, FL | Aviation Parts | $2000 | July 10, 2018 |
| Transcool Auto | Unknown | USCO27, Morgan Hill, CA | Satellite Communications Equipment | $6843 | October 15, 2018 |
| Transcool Auto | Unknown | USCO28, Lenexa, KS | QRM Switching System | $7727 | December 27, 2018 |
| Product Engineering | Unknown | USCO29, Stafford, TX | Emulators | $5267 | January 10, 2019 |

Overt Acts

41.     In furtherance of the conspiracy and to accomplish its objects, defendants

KAMRAN, KHAN, HAJI, AHSAN, WAHEED, UC-1, UC-2, UC-3, and others known and

unknown to the Grand Jury, committed at least one of the following overt acts, among others,

within the District of New Hampshire and elsewhere:

42.     Between in or about March 2015 and in or about June 2017, HAJI and AHSAN

received a total of approximately $142,000 in wire transfers from a Pakistani bank account

controlled by AERO and held in the name of The Business World in Rawalpindi into Buziness

World accounts in Canada.  HAJI and AHSAN used these funds in part to pay U.S. companies to

export goods.

43.  On or about December 30, 2015, KAMRAN, using EMAIL2, sent a message to

KHAN, copying AHSAN, and asking KHAN to check on a disputed $23,973.20 payment to

AHSAN, and stating, "[w]e will have to take this matter with the organization if it is not found."

44.     On or about July 12, 2016, WAHEED, using EMAIL5, notified KAMRAN that

he had paid to a U.S. company $13,503 from Industria HK for an export of goods to be delivered

to Business World in Pakistan and ordered by AERO.

45.     On or about January 25, 2017, KHAN caused USCO21, of Chatsworth, California, to make an unlicensed export of 25 Dynatime aircraft timers valued at $10,000 to Business World in Hong Kong.

46.     On or about March 30, 2017, KHAN caused the 25 Dynatime aircraft timers to be forwarded from Business World in Hong Kong to Business World in Pakistan.

Unlicensed Export to AERO From Industria

47.     On or about July 28, 2015, KAMRAN received a message at EMAIL2 with a "Tender Enquiry" from AERO, seeking specific parts from USCO30, State College, Pennsylvania.

48.     On or about March 11, 2016, WAHEED, using EMAIL5, received a purchase order for the parts from USCO30 from Business World in Pakistan to Business International GB Ltd.

49.     On or about May 10, 2016, UC-1, using EMAIL6, sent to WAHEED a quotation from USCO30 to Industria Inc. in Beckley, West Virginia, for the same parts and quantity requested by AERO in its Tender Enquiry of July 2015.

50.     On or about September 10, 2016, UC-1, using EMAIL7, forwarded to WAHEED a message entitled "[USCO30] Invoices" containing correspondence between UC-1 and USCO30 regarding payment for the requested parts.

51.     On or about September 28, 2016, WAHEED, using EMAIL5, sent UC-1 a message stating, "Shan usd 6980 has been transferred please pay to [USCO30]."

52.     On or about October 4, 2016, UC-1 received an invoice on EMAIL6 from USCO30 to Industria in Beckley, West Virginia, for the same parts, which were valued at $4370.

53.     On or about October 25, 2016, WAHEED, using EMAIL5, sent UC-1 a message entitled "[USCO30] shipment delivery address" and listing an address for a Hong Kong "air warehouse" in the name of "CTI HK Co. Ltd."

54.     On or about November 8, 2016, WAHEED, using EMAIL5, sent UC-1 an invoice for the same USCO30 parts, but for the lesser value of $401.74, from Industria in West Virginia to Transcool Auto Air Conditioning Products in Hong Kong, at the same address as that of Business World in Hong Kong.

55.     On or about November 29, 2016, the defendants and their co-conspirators caused a shipment that contained the same USCO30 parts from Business World in Hong Kong to Business World in Pakistan.

56.  On or about December 8, 2016, KAMRAN, using EMAIL1, sent a message to KHAN at EMAIL11, and copying WAHEED at EMAIL5, with an invoice from Business World Hong Kong for the same USCO30 parts.

<u>Unlicensed Export to PAEC from USCO17</u>

57.     On or about July 25, 2016 KAMRAN received a message at EMAIL1 stating, "Please confirm price in FOR, inquiry send by Ajmal ICCC." This message contained a request for the same part number and quantity of USCO17 cartridge heaters later exported to Industria in Hong Kong.  The ICCC or Instrumentation Control and Computer Complex is part of PAEC.

58.     On or about October 20, 2016, the defendants and their co-conspirators caused USCO17 of Brentwood, New Hampshire, to issue invoice number 4745 for cartridge heaters to a front company called Electro-Power Solutions, with the same address as Industria HK, Ltd.

59.     On or about October 20, 2016, KAMRAN, using EMAIL13, sent USCO17's pro forma invoice and wire instructions to HAJI and AHSAN at EMAIL8.

15

60.     On or about October 21, 2016, HAJI and AHSAN caused payment for the cartridge heaters to be wired to USCO17's Provident Bank account in Massachusetts from an account held at the Canadian Imperial Bank of Commerce and belonging to Buziness World of Mississauga, Ontario.

61.     On or about November 10, 2016, the defendants and their co-conspirators caused USCO17 to make an unlicensed export of cartridge heaters via UPS to:

> Industria HK Limited
> CTI S/O #E1617618
> Air Warehouse, Unit 01A, G/F
> 1-15 Kwai Fung Cresenct, Kwai Chung, N.T., Hong Kong

EEI accompanying the export identified the Ultimate Consignee as Industria HK.  However, UPS notified USCO17 that the initial recipient refused delivery.

62.     On or about November 15, 2016, KHAN, using a false name, contacted USCO17, stated that their Hong Kong warehouse was full, and requested that the shipment be re-routed to:

> Industria HK Ltd C/O Care Logistics & Warehouse Co. LTD
> Ground Floor, Winner Godown Building
> 1-9 Sha Tusi Road, Tsuen Wan, N.T.,
> Hong Kong

63.     On or about December 20, 2016, using EMAIL4, UC-3 sent a receipt listing the USCO17 cartridge heaters from Business World in Rawalpindi to the "Principal Admin Officer, Instrumentation Control & Computer Complex in Islamabad."

64.     On or about April 12, 2019, KHAN, posing as "Jason" from Business World, contacted USCO17 and requested 200 each of the same cartridge heater product to be shipped to Industria's Cheung Sha Wan Road address in Hong Kong.

<u>Unlicensed Export to AERO from USCO20</u>

65.     On or about July 9, 2015, KAMRAN, using EMAIL2, received an e-mail message from AERO that contained AERO's "Tender Enquiry" number 000004-15-16, seeking certain products. The needed products had the same model numbers and the same quantity of the products later exported by USCO20.

66.     On or about May 04, 2016, KAMRAN received Purchase Order number 000960-15-16 from AERO at EMAIL2 for these products and others. The purchase order stated that payment would be made to "BW Canada."

67.     On or about November 28, 2016, HAJI and AHSAN received at EMAIL8 and EMAIL9 from a Product Engineering email account a forwarded quote for these products from USCO20 of Contoocook, New Hampshire.

68.     On or about December 5, 2016, HAJI and AHSAN received at EMAIL8 and EMAIL9 from a Product Engineering email account a forwarded proforma invoice from USCO20.

69.     On or about December 7, 2016, HAJI and AHSAN caused payment for the shipment to be wired from a Canadian Imperial Bank of Commerce account maintained by Buziness World to USCO20's account maintained at Bank of America.

70.     On or about December 7, 2016, AHSAN, using EMAIL8, sent a wire report to Product Engineering showing that Buziness World Canada had paid USCO20 from its Canadian Imperial Bank of Commerce account.

71.     On or about December 20, 2016, the defendants and their co-conspirators caused USCO20, of Contoocook, New Hampshire, to make an unlicensed export of products, specifically, "MCC 100/Dual 50-Pin Hi-Density Cable" valued at $1344 USD, and "MCC 16-Channel, 16-Bit Analog Output Board" valued at $5172 USD, to Product Engineering in

Rawalpindi, Pakistan.  EEI filed with the export falsely stated that the ultimate consignee of the products was "Product Engineering" in Rawalpindi, Pakistan.

USCO25's Unlicensed Export to PAEC

72.     On or about March 6, 2017, UC-3, an employee of Business World in Rawalpindi, Pakistan, using EMAIL4, requested the price and availability for seven line items of industrial safety equipment sold by USCO25 of Manchester, New Hampshire.

73.     Beginning in or about October 2017, KAMRAN, using EMAIL13, contacted USCO25 about the requested items.

74.     On or about March 23, 2018, KAMRAN, using EMAIL1, and copying HAJI and AHSAN at EMAIL8, sent instructions to KHAN to pay USCO25 for the purchase.

75.     On or about May 9, 2018, the defendants and their co-conspirators caused to be wired a payment for the exported goods to USCO25's account held at Eastern Bank in Lynn, Massachusetts, from an account in the name of Biotech Middle East FZE held at a bank in Dubai, UAE.

76.     On or about June 25, 2018, KAMRAN, using EMAIL1, received booking reference information regarding the shipment from USCO25 from Airways Freight Pakistan. This documentation reflected that Business World in Rawalpindi was the shipper of the product.

77.     On or about June 29, 2018, KAMRAN emailed Airways Freight Pakistan and instructed them to change the name of the shipper to Buziness World at their address in Mississauga, Ontario, Canada.

78.     On or about July 7, 2018, the defendants and their co-conspirators caused USCO25, in Manchester, New Hampshire, to make an unlicensed export of goods via a Pakistani

freight forwarder.  This documentation also reflects that Buziness World in Mississauga, Ontario, Canada, was the shipper of the product.

79.     On or about August 2, 2018, the defendants and their co-conspirators sent a letter from Business World to the "Manager (Procurement), Chashma Nuclear Power Plant Project Unit 3&4" explaining that there had been a problem with the shipment from USCO25.  The Chashma Nuclear Power Plant is an asset of the PAEC.

<u>USCO31 Unlicensed Export to PAEC</u>

80.     On or about February 7, 2018, the defendants and their co-conspirators received an order from the Heavy Mechanical Complex at Taxila, Pakistan, an entity owned by PAEC, to Business World in Pakistan, for Electro Magnetic and Radio Frequency shielding materials made from copper beryllium.

81.     On or about March 2018, KAMRAN, using EMAIL2 and EMAIL13, contacted USCO31, of Plymouth, Massachusetts, regarding the same shielding materials, and provided an end-use statement that the shielding materials would be used by "Precision Engineering Services" in Islamabad, Pakistan, in hospitals to shield MRI rooms.

82.     On or about April 20, 2018, KAMRAN forwarded the USCO31 invoices to HAJI at EMAIL8.

83.     On or about April 27, 2018, HAJI responded to KAMRAN with a report for the pending payment to USCO31.

84.     On or about May 2, 2018, HAJI and AHSAN paid USCO31 for the order from the Buziness World account at the Canadian Imperial Bank of Commerce.

85.     On or about May 9, 2018, after USCO31 asked for further information about the order, KAMRAN sent USCO31 a Canadian permanent resident card in the name and with a photo of HAJI.  Regarding why payment came from Canada, KAMRAN wrote, "The wire made by Buziness World Canada (because it's a proprietary account, the slip shows individual name). The funds transfer have been made by them as a favour as we had returned money to customer and it will be repaid against delivery to us which we will settle with Buziness World Canada later."

86.     On or about June 1, 2018, KAMRAN received from a Pakistani freight company documentation of the export of the USCO31 products, with an air waybill that showed that Buziness World Canada was the shipper.


<u>The Offense</u>

87.     Beginning in or about September 2014 and continuing through the date of this Indictment, in the District of New Hampshire and elsewhere, the defendants:

MUHAMMAD KAMRAN WALI,

MUHAMMAD AHSAN WALI,

HAJI WALI MUHAMMAD SHEIKH,

ASHRAF KHAN MUHAMMAD, and

AHMED WAHEED,

did willfully conspire with one another, with UC-1, UC-2, and UC-3, who are not named as defendants in this Indictment, and with other persons known and unknown to the Grand Jury to export and cause to be exported goods from the United States to entities in Pakistan that were

listed on the BIS Entity List, namely AERO and PAEC, without having first obtained the required licenses from the United States Department of Commerce.

(All in violation of Title 50, United States Code, Sections 1705(a) and (c) and 4819.)

<u>COUNT 2</u>

[18 U.S.C. § 371 – Conspiracy to Smuggle Goods From the United States]

88.     The allegations in paragraphs 1-86 of this Indictment are realleged.

89.     Beginning in or about September 2014, and continuing through the date of this Indictment, in the District of New Hampshire and elsewhere, the defendants:

MUHAMMAD KAMRAN WALI,

MUHAMMAD AHSAN WALI,

HAJI WALI MUHAMMAD SHEIKH,

ASHRAF KHAN MUHAMMAD, and

AHMED WAHEED,

did willfully conspire with one another, with UC-1, UC-2, and UC-3, are not named as defendants in this Indictment, and with other persons known and unknown to the Grand Jury to commit the offense of Smuggling Goods From the United States in violation of Title 18, United States Code, Section 554, namely, to knowingly export and send from the United States merchandise, articles, and objects, contrary to Title 13, United States Code, Section 305, by falsely identifying the Ultimate Consignees of the shipments as entities other than AERO or PAEC.

90.     In furtherance of the conspiracy and to accomplish its objects, defendants KAMRAN, KHAN, HAJI, AHSAN, WAHEED, UC-1, UC-2, UC-3, and others known and

known to the Grand Jury, committed at least one of the overt acts alleged in Paragraphs 41-86 of this Indictment.

(All in violation of Title 18, United States Code, Section 371.)

A TRUE BILL

/s/ Foreperson
Grand Jury Foreperson

SCOTT W. MURRAY
United States Attorney

/s/ John S. Davis
John S. Davis
Assistant United States Attorney

Nicholas Hunter
Trial Attorney
Counterintelligence and Export Control Section
National Security Division

October 16, 2019